# JANUARY, 1907.

## L. R. FESSENDEN v. J. J. TERRELL, COMMISSIONER.

### No. 1612. Decided January 2, 1907.

**School Land—Opening Bids—Legal Holiday—Sunday.**

Bids were invited for the purchase of school land to come on the market on Friday; the law required all to be considered which were filed prior to the time fixed for opening the bids, which was, by the law, ten o'clock on the following day (Laws 1905, p. 161) ; Saturday, the day following, fell on a legal holiday, and the bids were not opened till Monday morning. Held, that the land was properly awarded to one who bid highest, but whose bid was received prior to ten o'clock on Monday morning, which, being the first day for conducting department business, was the day following that on which the lands came on the market, within the meaning of the statute. (Pp. 274, 275.)

Original proceedings in the Supreme Court to obtain writ of mandamus against the Commissioner of the General Land Office.

*Rogan & Simmons,* for relator.

*R. V. Davidson,* Attorney-General, and *Wm. E. Hawkins,* Assistant, for respondent.

GAINES, CHIEF JUSTICE.—This is a petition for a writ of mandamus to compel the Commissioner of the General Land Office to cancel the award of certain sections of school land made to one J. C. Stark (who is made a party defendant), and to award the sections to the relator as the purchaser thereof.

·The lands in controversy were duly advertised by the respondent, the Commissioner of the General Land Office, as coming upon the market on April 20, 1906. On the 24th of March, 1906, the relator mailed applications in envelopes, endorsed as required by law, for lands which were to come on the market at a future day, for the purchase of four sections of land, three of which are the sections in controversy. It is not questioned that he complied in all respects with the requirements of the statute for such applications. April 20, 1906, fell on Friday. Saturday was a legal holiday, and the next day being Sunday, the applications for the purchase of the lands to come on the market on Friday were not opened until 10 o'clock Monday morning. The defendant, Stark, however, a few days previous, had mailed applications for the three sections in controversy. They also were duly enveloped, addressed to the Commissioner of the General Land Office, and also duly endorsed as required by the statute. They complied in all respects with the law, but were not received at the land office until the morning of Monday, the 23d of April. They were received, however, before 10 o'clock of that morning. They were opened, together with other applications previously received, including those of the defendant, on that day, and Stark being the highest bidder for the three sections in question, they were subsequently awarded to him.

So much of the statutes as relates to this matter reads as follows: "Said application, affidavit and obligation shall be filed in the Land Office through due course of mail, and not by anyone in person, in an envelope addressed to. the Commissioner of the General Land Office at Austin, Texas, and when the land is to come on the market at some future date the envelope shall have endorsed thereon as follows: 'Application to buy land; Sections ——, Block ——, Grantee ——, County ——, Date on Market ——,' and the blanks shall be properly filled out. When the envelope so endorsed is received in the Land Office, it shall be safely and securely kept and preserved by the Commissioner, or his chief clerk, without being opened until the day following the date endorsed thereon as to when the land comes on the market, and one or both of them shall begin at 10 o'clock a. m., on the day following the day the land comes. on the market, to open the envelopes for inspection of the applications and such action as is herein provided for, and in the presence of the applicants, if they desire to be present, or in the presence of such person as they may designate to represent them, and said applications shall immediately be filed, together with all other applications received up to that time for the same land." (Laws of 1905, p. 161.) Upon the first presentation of the question we were inclined to think that only such bids as were received before 10 o'clock of April 21 could be considered. But the question has suggested itself, what is meant by the words, "on the day following the day the land comes upon the market." Did the Legislature mean the next calendar day after

the land was to come upon the market, or the next official day—that is, the next day on which the Land Office was required to be opened for official business? If the next calendar day was meant, then, when land should come upon the market on Saturday, it would be the imperative duty of the Commissioner of the General Land Office, or of his chief clerk, to open the bids on Sunday, and to afford the interested parties an opportunity to be present to protect their rights. It seems to us that no one would seriously contend that the Legislature intended to require these officers to perform a duty so contrary to the spirit of our laws. Article 2939 of our Revised Statutes declares the 21st of April to be one of the legal holidays "on which all the public offices of the State may be closed;" and it has been the practice of the state departments to close upon every such day. In the matter of opening the bids for the purchase of school lands there is no urgency for immediate action, and therefore we do not think the purpose of the Legislature was to change the general rule and to require the Commissioner of the General Land Office to open his office on Sundays or legal holidays merely for the performance of this duty.

These considerations lead us to conclude that the Legislature, by the word "day" in the language previously quoted, meant, not the next calendar day, but the next day on which the Land Office was required to be open; and that, as applied to the facts of this case, Monday, the 23d of April, was the next day after the land came upon the market.

Stark's bid having been received before 10 o'clock on the morning of the day mentioned, it was properly opened and considered, and he being the highest bidder, the land was properly awarded to him.

The writ of mandamus is therefore refused.

*Mandamus refused.*